# IN THE UNITED STATES DISTRICT COURT FOR THE
# WESTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| BENJAMIN L. STANLEY, | ) |
| Plaintiff, | ) ) ) |
| vs. | ) ) ) Case No. CIV-11-1504-L |
| CAROLYN W. COLVIN, Acting Commissioner of the Social Security Administration[1], | ) ) ) ) ) |
| Defendant. | ) ) |

## REPORT AND RECOMMENDATION

Plaintiff brings this action pursuant to 42 U.S.C. §405(g) for judicial review of the final decision of the Commissioner of the Social Security Administration denying Plaintiff's application for disability insurance benefits (DIB) and supplemental security income (SSI) under the Social Security Act. This matter has been referred to the undersigned magistrate judge for initial proceedings consistent with 28 U.S.C. §636(b)(1)(B)-(C). The Commissioner has answered and filed the administrative record (hereinafter TR. ___). The parties have briefed their positions, and the matter is now at issue. For the reasons stated herein, it is recommended that the Commissioner's decision be **REVERSED AND REMANDED** for further administrative proceedings.

---

[1] Carolyn W. Colvin became Acting Commissioner of the Social Security Administration on February 14, 2013. Therefore, pursuant to Rule 25(d)(1) of the Federal Rules of Civil Procedure, Acting Commissioner Colvin is hereby substituted for Commissioner Michael J. Astrue as the defendant in this suit. No further action need be taken to continue this suit by reason of the last sentence of § 405(g) of the Social Security Act, 42 U.S.C. § 405(g).

## PROCEDURAL HISTORY

Plaintiff's applications for DIB and SSI, were denied on initial consideration and on reconsideration at the administrative level (TR. 9). An ALJ held a *de novo* hearing on June 2, 2009 (TR. 9; 31-81).[2] The ALJ issued an unfavorable decision on January 14, 2010, finding that Plaintiff was not disabled (TR. 9-26). On October 26, 2011, the Appeals Council denied Plaintiff's request for review, (TR. 1-4), making the decision of the ALJ the final decision of the Commissioner.

## STANDARD OF REVIEW

Judicial review of the Commissioner's final decision is limited to determining whether the factual findings are supported by substantial evidence in the record as a whole and whether the correct legal standards were applied. *See Poppa v. Astrue*, 569 F.3d 1167, 1169 (10th Cir. 2009). "Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Doyal v. Barnhart*, 331 F.3d 758, 760 (10th Cir. 2003) (quotation omitted). A decision is not based on substantial evidence if it is overwhelmed by other evidence in the record or if there is a mere scintilla of evidence supporting it. *Branum v. Barnhart*, 385 F.3d 1268, 1270 (10th Cir. 2004). The court "meticulously examine[s] the record as a whole, including anything that may undercut or detract from the [administrative law judge's] findings in order to determine if the substantiality test has been met." *Wall v. Astrue*, 561 F.3d 1048, 1052 (10th Cir. 2009) (citations omitted). While the court considers whether the ALJ followed the applicable rules of law in weighing particular types of evidence in

---

[2] Plaintiff had previously filed applications for DIB and SSI. An ALJ issued an unfavorable decision on September 24, 2006, and the Appeals Council declined to review the decision. Therefore, the applicable onset date for this case is September 25, 2006 (TR. 9).

disability cases, the court does not reweigh the evidence or substitute its own judgment for that of the Commissioner. *Bowman v. Astrue*, 511 F.3d 1270, 1272 (10th Cir. 2008) (quotations and citations omitted).

## THE ADMINISTRATIVE DECISION

The ALJ followed the five-step sequential evaluation process set forth in 20 C.F.R. §§404.1520; 416.920. At step one, the ALJ found that the Plaintiff had not engaged in substantial gainful activity since the amended onset date of his alleged disability (TR. 11). At step two the ALJ found that Plaintiff had severe impairments including chronic obstructive pulmonary disease and status post right ankle surgery (TR. 11). At step three, the ALJ determined that neither of Plaintiff's impairments or combination of impairments meets or equals the limiting characteristics of any of the presumptively disabling impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 (TR. 20). The ALJ then formulated Plaintiff's residual functional capacity (RFC):

> After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform sedentary work as defined in 20 CFR 404.1567(a) and 416.967(a) except he only occasionally can kneel, stoop, or crawl; must work in a climate controlled environment with no concentrated exposure to dusts, fumes, gases, and odors; can never climb ladders, ramps, or scaffolds; cannot balance; cannot crouch; occasionally can climb stairs and ramps;[3] cannot use his right leg to operate foot controls; and cannot walk on uneven work surfaces. He can perform simple, repetitive tasks with routine supervision; but he cannot have contact with the public or perform customer service functions. He is able to adjust to work settings, and is able to relate to peers and supervisors on a superficial level. He must be able to use a wheeled walker at work

---

[3] The ALJ's RFC is internally inconsistent regarding Plaintiff's ability to climb ramps.

3

(TR. 21). The ALJ then determined that Plaintiff could not perform his past relevant work as glazier, tow truck driver or meat cutter (TR. 24). At step five of the sequential evaluation process, the ALJ determined that Plaintiff has the ability to perform other work such as a printed circuit board assembler or surveillance systems monitor (TR. 25).

## ISSUES PRESENTED

Plaintiff contends that the ALJ erred in her analysis at step three, in her consideration of Plaintiff's obesity, and in her evaluation of the medical evidence.

## ANALYSIS

### I.   The ALJ's Analysis at Step Three

At the third step of the sequential evaluation, the ALJ must consider whether a claimant's impairment is severe enough to meet the requirements of the presumptively disabling impairments listed at 20 C.F.R. Part 404, Subpart P, Appendix 1. It is the duty of the ALJ to explain why a claimant does not meet a listing. *See Clifton v. Chater*, 79 F.3d 1007, 1009-1010 (10th Cir. 1996) (under 42 U.S.C. 405(b)(1) an ALJ is required to discuss the evidence and explain why a claimant is not disabled at step three).

Plaintiff contends that his ankle impairment meets listing 1.03 and that, therefore, the ALJ should have found him to be disabled at the third step of the sequential evaluation. In the alternative, Plaintiff contends that none of the other findings at steps four or five "conclusively negate the possibility" that he can meet listing 1.03 and that therefore, this case should be remanded for further review. *See Fischer-Ross v. Barnhart*, 431 F.3d 729, 733 (10th Cir. 2005) (step three error requires

remand unless specific findings at steps four and five of the sequential process preclude any favorable ruling for the claimant at step three).

Listing 1.03 first requires a showing that a claimant has had "[r]econstructive surgery or surgical arthrodesis of a major weight-bearing joint." An ankle is, of course, a "major weight-bearing joint." *See Jenkins v. Chater*, 119 F.3d 6, 1997 WL 400114 at 2, (9th Cir. Jul. 11, 1997) (claimant required surgeries on left ankle, a major weight bearing joint) (unpublished op.). Although there are no surgical records included in the administrative record, the ALJ found at step two of the sequential evaluation process that Plaintiff was "status post right ankle surgery," (TR. 11), citing a medical record in which Plaintiff reported he had undergone right ankle surgery secondary to an occupational injury (TR 271). The Commissioner contends that with no surgical records, the exact type of surgery is unknown (ECF 13 p. 6). But the ALJ did not rely on this theory during her step three analysis, and this court cannot accept or create *post hoc* rationalizations to support the ALJ's decision. *See Haga v. Astrue*, 482 F.3d1205-1207-1208 (10th Cir. 2007) ("[T]his court may not create or adopt *post-hoc* rationalizations to support the [administrative law judge's] decision that are not apparent from the [judge's] decision itself." (citations omitted)); *Allen v. Barnhart*, 357 F.3d 1140, 1142 (10th Cir. 2004) ("Affirming this *post hoc* effort to salvage the [administrative law judge's] decision would require us to overstep our institutional role and usurp essential functions committed in the first instance to the administrative process.").

The second requirement necessary to meet the listing at 1.03 is the "inability to ambulate effectively, as defined in 1.00B(2)(b), and return to effective ambulation did

not occur, or is not expected to occur, within 12 months of onset." "Inability to ambulate effectively" is defined as follows:

> Inability to ambulate effectively means an extreme limitation of the ability to walk; i.e., an impairment(s) that interferes very seriously with the individual's ability to independently initiate, sustain, or complete activities. Ineffective ambulation is defined generally as having insufficient lower extremity functioning (see 1.00J) to permit independent ambulation without the use of a hand-held assistive device(s) that limits the functioning of both upper extremities

20 C.F.R. Pt. 404, Subpt. P, App. 1, listing 1.03.

In the discussion of her findings at step three, the ALJ did not identify listing 1.03 as the relevant listing. Rather, she referred generally to "musculoskeletal impairments" (TR. 21). Regarding Plaintiff's impairment resulting from the injury to his ankle, subsequent surgery and inability to ambulate without a walker, the ALJ stated:

> The claimant does not have consistent findings of a loss of the ability to ambulate effectively, although clinicians have reported a limping and slightly unsteady gait without the use of a cane, nor are there findings of lack of gross and fine manipulation. There is no evidence of joint dysfunction or malformation. He does not have consistent evidence of reflex loss, motor loss, sensory loss, muscle atrophy, positive straight-leg raising or other findings to meet the requirements for listed musculoskeletal impairments

(TR. 20-21). The ALJ's step three analysis is inadequate. First, her failure to identify the relevant listing leaves the court uncertain that the ALJ actually knew the requirements of listing 1.03. Moreover, the ALJ acknowledged that "clinicians have reported limping and slightly unsteady gait." This statement suggests that Plaintiff's inability to ambulate effectively did in fact meet the 12-month requirement (TR. 20). Her reference to

"straight-leg raising" further obfuscates the issue, as the straight-leg raising test is used to determine the extent of back pain (TR. 21). Finally, this court is at a loss in attempting to discern the meaning of "consistent findings of a loss of the ability to ambulate effectively" (TR. 20). The testimony of the VE further muddies the water. When the ALJ's hypothetical question included the necessity of using a wheeled walker, the VE stated: "If the wheeled walker is required[,] then the person could not do the jobs[,] but these jobs being sedentary[,] do not require the use of a wheel walker" (TR. 78). If sedentary jobs never required effective ambulation, there would be no need for the listing at 1.03. But regardless of the ALJ's definition, the fact that she specifically found in her RFC assessment that Plaintiff "must be able to use a wheeled walker at work" settles the matter. If Plaintiff must use a wheeled walker he cannot, by definition, "ambulate effectively." On remand, the ALJ must complete a comprehensive analysis at step three.

## II. The ALJ's Consideration of Plaintiff's Obesity

The next issue raised in this appeal concerns the ALJ's failure to properly consider the effects of Plaintiff's obesity in combination with his other impairments.

Social Security Ruling (SSR) 02-1p requires an ALJ to consider the effects of obesity when assessing RFC because "the combined effects of obesity with other impairments can be greater than the effects of each of the impairments considered separately." Titles II & XVI: Evaluation of Obesity, SSR 02-1p, 2000 WL 628049, at *1 (Sept. 12, 2002). This evaluation is particularly important when a claimant has both musculoskeletal impairments and obesity. At each step of the sequential evaluation,

7

whether determining that a claimant with obesity does or does not have a listing level impairment or combination of impairments, assessing a claimant's RFC, or determining what jobs, if any, a claimant could perform, an ALJ must consider the cumulative effects of obesity and the claimant's other impairments.

There is no specific body weight that, standing alone, makes obesity a "severe" impairment. Nevertheless, as the ruling states, a claimant's weight and body mass index (BMI), combined with musculoskeletal impairments, can make an otherwise mild or moderate condition severe.

In this case, the ALJ noted that Plaintiff, who stood 6' 5" tall and weighed 440 pounds, had a body mass index (BMI) of 52.2. The ALJ further stated that a person with a BMI over 29 is considered obese (TR. 20). But the ALJ stated only that "[t]he effects of the claimant's obesity have been considered when determining a residual functional capacity for the claimant" (TR. 20). As Plaintiff avers, the ALJ's consideration of Plaintiff's obesity consists primarily of boilerplate language and does not comport with the analysis described in the regulations. On remand, the ALJ should evaluate the effects of Plaintiff's obesity at every step of the sequential evaluation.

### III. The ALJ's Analysis of the Opinion of Plaintiff's Treating Physician

Plaintiff's final assignment of error is based on the ALJ's treatment of the Medical Source Statement of Dr. Seema Jabeen (TR. 456-457).

The Tenth Circuit Court of Appeals has long recognized the proper analysis and assignment of weight to be given to the opinions of treating and non-treating sources. When considering the opinion of an "acceptable medical source" such as the Plaintiff's

treating physician, the ALJ must first determine whether the opinion should be given "controlling weight" on the matter to which it relates. *See Watkins v. Barnhart*, 350 F.3d 1297, 1300 (10th Cir. 2003). The opinion of a treating physician must be given controlling weight if it is well-supported by medically acceptable clinical or laboratory diagnostic techniques and is not inconsistent with other substantial evidence in the record. *Id.* (applying SSR 96–2p, 1996 WL 374188, at *2); 20 C.F.R. § 404.1527(d)(2). If the opinion is deficient in either of these respects, it should not be given controlling weight.

Even if the opinion of a treating physician is not entitled to controlling weight, however, it is still entitled to deference. The ALJ must clearly state the weight the opinion is being given, even if it is being rejected. The ALJ must specify the reasons for the weight afforded the opinion, and the reasons must be closely tied to the factors specified in the regulations. *See Watkins*, 350 F.3d at 1300–01. Remand is required only if the ALJ does not adequately support the weight he assigned to the opinion of an acceptable medical source. As the relevant ruling explains:

> Adjudicators must remember that a finding that a treating source medical opinion is not well-supported by medically acceptable clinical and laboratory diagnostic techniques or is inconsistent with the other substantial evidence in the case record means only that the opinion is not entitled to "controlling weight," not that the opinion should be rejected. Treating source medical opinions are still entitled to deference and must be weighed using all of the factors provided in [§§] 404.1527 and 416.927. In many cases, a treating source's medical opinion will be entitled to the greatest weight and should be adopted, even if it does not meet the test for controlling weight.

9

SSR 96–2p, 1996 WL 374188, at *4. See also Langley v. Barnhart, 373 F.3d 1116, 1121 (10th Cir. 2004) (holding that while absence of objective testing provided basis for denying controlling weight to treating physician's opinion, "[t]he ALJ was not entitled. . . to completely reject [it] on this basis"). The second inquiry is governed by its own set of factors: (1) the length of the treatment relationship and the frequency of examination; (2) the nature and extent of the treatment relationship, including the treatment provided and the kind of examination or testing performed; (3) the degree to which the physician's opinion is supported by relevant evidence; (4) consistency between the opinion and the record as a whole; (5) whether or not the physician is a specialist in the area upon which an opinion is rendered; and (6) other factors brought to the ALJ's attention which tend to support or contradict the opinion. Id. at 1119 (quotation omitted). In applying these factors, the ALJ's findings must be "sufficiently specific to make clear to any subsequent reviewers the weight she gave to the treating source's medical opinion and the reason for that weight." Id. (quotation omitted).

According to Plaintiff, Dr. Seema Jabeen began treating Plaintiff on March 10, 2009, and continued to treat him up to the date of the administrative hearing. If Dr. Jabeen's opinion of Plaintiff's physical limitations had been adopted by the ALJ, Plaintiff would have been found disabled at step five. But the ALJ stated that she was giving Dr. Jabeen's opinion "little weight" because Plaintiff had submitted no medical records, because Plaintiff and Dr. Jabeen had no long established doctor and patient relationship, and because Plaintiff had only seen Dr. Jabeen one other time (TR. 23). Additionally, the ALJ found that, because there was no indication that Plaintiff had

submitted prior medical records to Dr. Jabeen, Dr. Jabeen's opinion was based solely on Plaintiff's subjective complaints.

The ALJ's reasons for giving Dr. Jabeen's opinion little weight are sound.

## RECOMMENDATION

Having reviewed the medical evidence of record, the transcript of the administrative hearing, the decision of the ALJ and the pleadings and briefs of the parties, the undersigned magistrate judge finds that the decision of the Commissioner should be **REVERSED AND REMANDED** for further administrative proceedings.

## NOTICE OF RIGHT TO OBJECT

The parties are advised of their right to file specific written objections to this Report and Recommendation. *See* 28 U.S.C. §636 and Fed. R. Civ. P. 72. Any such objections should be filed with the Clerk of the District Court by **June 11, 2013**. The parties are further advised that failure to make timely objection to this Report and Recommendation waives the right to appellate review of the factual and legal issues addressed herein. *Moore v. United States*, 950 F.2d 656 (10th Cir. 1991).

## STATUS OF REFERRAL

This Report and Recommendation terminates the referral by the District Judge in this matter.

**ENTERED** on May 28, 2013.



SHON T. ERWIN
UNITED STATES MAGISTRATE JUDGE